**THE BROWN LAW FIRM, P.C.**
Timothy W. Brown
240 Townsend Square
Oyster Bay, New York 11771
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
Email: tbrown@thebrownlawfirm.net

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUSTIN SYLVA, Derivatively and on behalf of HONGLI CLEAN ENERGY TECHNOLOGIES CORP. <br><br> Plaintiff, <br><br> v. <br><br> JIANHUA LV, SONG LV, HUI ZHENG, YUSHAN JIANG, HUI HUANG, HAOYI ZHANG <br><br> Defendants, <br><br> and <br><br> HONGLI CLEAN ENERGY TECHNOLOGIES CORP., <br><br> Nominal Defendant. | Case No. _____ <br><br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |

Plaintiff Justin Sylva ("Plaintiff"), by and through his undersigned counsel, derivatively on behalf of Nominal Defendant Hongli Clean Energy Technologies Corp. ("Hongli" or "the Company"), files this Verified Shareholder Derivative Complaint against Defendants Jianhua Lv, Song Lv, Hui Zheng, Yushan Jiang, Hui Huang, and Haoyi Zhang (collectively, the "Individual Defendants") for breaches of their fiduciary duties as directors and/or officers of Hongli, unjust enrichment, waste of corporate assets, abuse of control, and gross mismanagement. As for his

complaint against the Individual Defendants, Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Hongli, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action that seeks to remedy wrongdoing committed by Hongli's directors and officers beginning on March 29, 2015 and continuing through the present (the "Relevant Period").

2.      Hongli is a vertically-integrated coal and coke processor that produces value added coal products for various industrial users. Incorporated in Florida, the Company is based in Henan Province in The People's Republic of China ("China").

3.      Hongli's stock has been listed on the Nasdaq Stock Market ("NASDAQ") since 2009, first under the symbol "SCOK" and then under the symbol "CETC" following the effectuation of a name change.

4.      Beginning on September 29, 2015, Hongli began receiving delisting notices from the NASDAQ regarding its failure to maintain a minimum bid price of $1.00 per share in compliance with the NASDAQ Continued Listing Rule 5550(a)(2).

5.     On September 29, 2016, the Company filed a notification of inability to timely file a Form 10-K for the year ended June 20, 2016.

6.     On October 12, 2016, Hongli received a second determination letter from the NASDAQ informing the Company that its failure to timely file its annual report on Form 10-K served as an additional basis for delisting Hongli's securities.

7.     After continuously trading under at under $1.00 per share since the initial delisting notice, the Company effectuated a 1-for-10 reverse stock split on October 27, 2016, which had the effect of raising the price per share above $1.00.

8.     On April 7, 2017, the Company's stock was delisted from the NASDAQ and all trading in Hongli securities was suspended.

9.     On April 21, 2017, Hongli filed a Form 8-K with the SEC informing investors that it had dismissed its independent auditor, KSP Group, Inc. ("KSP"). The Form 8-K filing falsely stated that there were no disagreements between the Company and the dismissed independent auditor.

10.     On April 26, 2017, the Company was forced to file an amended Form 8-K, which corrected the prior filing by noting that KSP believed a disagreement between the Company and the auditor existed at the time of dismissal.

11.     Specifically, KSP believed that impairment of assets and loss on disposal of assets reported in the Form 10-Q for the nine-month period ended March 31, 2016 was inaccurately reported. KSP believed that the impairment of those assets occurred prior to July 1, 2015.

12.     As a result, KSP stated that it believed that all prior financial statements of the Company should be revaluated and restated.

13.     KSP's letter to the SEC dated April 26, 2017, which was attached as an exhibit to

the amended Form 8-K stated in pertinent part:

> The Company engaged us as the auditor on August 29, 2016, to audit the financial statements for the year ended June 30, 2016. Prior to our engagement as the auditor, the Company filed its 10K for the year ended June 30, 2015 on October 13, 2015. The 10K contained the financial statement audited by another auditor, reflecting the total assets of $193,640,490. Subsequently on May 23, 2016, the Company filed a 10Q for the period ended March 31, 2016. The financial statements included in the 10Q for the period ended March 31, 2016, reviewed by another auditor, showed the total assets of $28,059,642, thereby showing the total impairment of $44,892,912 and the total loss on disposal of assets amounting $61,347,381. We did not agree with the Company that the entire loss (Impairment as well as loss on disposal) of $106,240,293 occurred in the nine-month period ended June 30, 2016. We believe that the impairment of these assets did not occur instantly in the period ended March 31, 2016, but occurred prior to July 1, 2015. Therefore, all the prior financial statements (audited as well as reviewed) and filed with the Securities and Exchange Commission, should be re-evaluated based upon actual valuation of the assets on each Balance Sheet date, and be restated to reflect the assets at the impaired amounts. We believe that the impairment expenses related to these assets should have been recorded in the respective periods when the impairments actually occurred. We had communicated this matter to the management of the company and had suggested to the management to engage an independent valuation firm to value the assets of the company in the prior periods, to evaluate the true value of impairment in each period. To the date of our termination, we had not received a final valuation report from an independent valuation Company. Therefore, we were unable to finish the audit.

14.     During the Relevant Period, the Individual Defendants breached their fiduciary

duties by personally making and/or causing the Company to make a series of materially false

and/or misleading statements regarding the Company's business, operations, and prospects.

Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company

to make false and/or misleading statements and/or omissions of material fact to the investing public

that failed to disclose that the Company: (1) failed to properly record the impairment of assets; (2)

filed false and misleading statements with the SEC, with respect to both the opinions of its

independent auditor and the value of its assets; and (3) failed to maintain internal controls.

4

15.     As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

16.     The Individual Defendants also breached their fiduciary duties by failing to correct and/or caused the Company to fail to correct these false and/or misleading statements and/or omissions of material fact, rendering them personally liable to the Company for breaching their fiduciary duties.

17.     Additionally in breach of their fiduciary duties, the Individual Defendants caused the Company to fail to maintain internal controls.

18.     In light of the Individual Defendants' misconduct, which has subjected Hongli, its Chief Executive Officer ("CEO"), and its Chief Financial Officer ("CFO") to being named as defendants in a consolidated federal securities fraud class action lawsuit pending in the United States District Court for the District of New Jersey (the "Securities Class Action"), the need to undertake internal investigations, the need to implement adequate internal controls over its financial reporting, losses from the waste of corporate assets, losses due to the unjust enrichment of the Individual Defendants who were improperly over-compensated by the Company and/or who benefitted from the wrongdoing alleged herein, the Company will have to expend many millions of dollars.

19.     The Company has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty.

20.     As detailed below, on July 25, 2017, Plaintiff sent a pre-suit demand letter to Hongli's board of directors (the "Board"), which was received on July 31, 2017.

21.     As of the date of the filing of this Complaint, more than ninety days have passed since the written demands was made on the Board, and the Board has not responded to Plaintiff's

pre-suit demand. Thus, the Board is deemed as a matter of law to have wrongfully ignored Plaintiff's pre-suit demand.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), Rule 14a-9 of the Exchange Act, and 17 C.F.R. § 240.14a-9, and raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

23.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

24.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

25.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391, 1401, and §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) because a substantial portion of the transactions and wrongs complained of herein, and resulting damages, occurred in this District.

26.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

### Plaintiff

27.     Plaintiff is a current shareholder of Hongli common stock. Plaintiff has continuously held Hongli common stock since before the beginning of the Relevant Period.

**Nominal Defendant Hongli**

28.      Nominal Defendant Hongli is a Florida corporation with its principal executive offices at Kuanggong Rd & Tiyu Rd 10th Flr, Chengshi Xin Yong She, Tiyu Rd, Xinhua District Pingdingshan, Henan Province, People's Republic of China, 467000.

29.      Hongli stock traded on the "NASDAQ" under the ticker symbol "CETC" prior to April 11, 2017, when the stock was delisted and trading was suspended due to the Company's failure to timely file reports with the SEC.

30.      The NASDAQ announced on October 5, 2017 that a final determination had been made and Hongli's stock had been delisted from the exchange.

**Defendant Jianhua Lv**

31.      Defendant Jianhua Lv ("J. Lv") is the Company's CEO and Chairman of the Board. Defendant J. Lv is the founder of the Company, and has been Executive Director and Chairman since 1996. According to the Company's Schedule 14A filed with the SEC on May 12, 2016 (the "2016 Proxy Statement"), as of April 22, 2016, Defendant J. Lv beneficially owned 7,948,168[1] shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 22, 2016 was $0.50,[2] J. Lv beneficially owned $3,974,084 worth of Hongli stock, which was approximately 33% of the Company's outstanding stock.

---

[1] This number represents shares held directly by (a) Mr. Jianhua Lv and (b) Honour Express Limited, a British Virgin Islands international business company ("Honour Express"). On October 7, 2014, Mr. Lv exercised his option pursuant to a certain Incentive Option Agreement to acquire 100% of the outstanding shares of Honour Express, which directly owns 6,694,091 shares of the Company's common stock, and became the sole shareholder of Honour Express. In such capacity, he is deemed to have voting and dispositive power over the shares held directly by Honour Express. Mr. Lv's address is: 10th Floor, Chengshi Xin Yong She, Tiyu Road, Xinhua District, Pingdingshan, Henan Province, People's Republic of China, 467000.

[2] The Company effectuated a 1-for-10 reverse stock split on October 27, 2016. As such, the price per share cited here does not account for the stock split, despite historical stock price charts available on the internet accounting for this split by listing the price as if the stock split had already occurred prior to the date it was effected.

32.     Defendant J. Lv made several interest free loans to the Company totaling over $5.4 million. It appears from the Company's Form 10-K filed with the SEC on July 19, 2017 that over $911,000 of those loans remained unpaid as of June 30, 2016, the remainder having been repaid in cash.

33.     For the fiscal year ended June 30, 2015, Defendant J. Lv received $240,000 in compensation from the Company in the form of salary.

34.     The Company's 2016 Proxy Statement stated the following about Defendant J. Lv:

**Jianhua Lv**[3] serves as our Chief Executive Officer and the Chairman of our Board of Directors, and has been the executive director and chairman of Henan Province Pingdingshan Hongli Coal & Coke Co., Ltd. ("Hongli") since 1996, when he founded the company. From 1989 to 1996, Mr. Lv held a number of positions at the Henan Province Pingdingshan Coal Group, where he developed many years of experience in the coal and coking industries. In early 2007, Mr. Lv was appointed as a standing committee member of the Chinese People's Political Consultative Conference of Baofeng, Henan Province, and as a standing committee member of the National People's Congress of Baofeng, Henan Province. Mr. Lv has been honored as an outstanding entrepreneur of the year in 2003 and 2004. Mr. Lv holds a bachelor's degree in Chinese and a master's degree in economics from Henan University, and a master of law degree from the Central Party School. Mr. Lv's experience as our Chief Executive Officer and Chairman, and his extensive knowledge of the coal and coking industries, qualify him to serve on the Board and led the Nominating Committee to conclude that he should be nominated to serve another term as a director.

**Defendant Song Lv**

35.     Defendant Song Lv ("S. Lv") served as the Company's CFO from April 2014 to August 3, 2016.

36.     For the fiscal year ended June 30, 2015, Defendant S. Lv received $120,000 in compensation from the Company in the form of salary.

37.     The Company's 2017 Proxy Statement stated the following about Defendant S. Lv:

---

[3] Emphasis is contained in the original throughout this Complaint unless stated otherwise.

Song Lv, age 42, was appointed as the Company's Chief Financial Officer and Treasurer on April 18, 2014. Mr. Song Lv has served as controller in the finance and accounting department of Henan Province Pingdingshan Hongli Coal & Coke Co., Ltd. ("Hongli") since June 2010. All of the Company's business operations are conducted through Hongli in the People's Republic of China. From April 2007 to November 2010, Mr. Song Lv was Chief Financial Officer of Xinhe Investment Co., Ltd. Mr. Song Lv has a bachelor's degree in finance and accounting from Northeastern University. There is no family relationship between Mr. Song Lv and any of the Company's current directors, executive officers or persons nominated or charged to become directors or executive officers, or those of the Company's subsidiary.

**Defendant Zheng**

38.     Defendant Hui Zheng ("Zheng") has served as a Company director since at least 2011, and as vice manager of Human Resources since 2006.

39.     For the fiscal year ended June 30, 2015 Defendant Zheng received $10,000 in compensation from the Company in the form of fees earned or paid in cash.

40.     The Company's 2017 Proxy Statement stated the following about Defendant Zheng:

> **Hui Zheng** serves as our Secretary, and has served as vice manager of Human Resources at Hongli since 2006, and as a statistician, secretary and vice-dean from 1998 until 2006. Mr. Zheng has worked in the materials industry since 1996. Mr. Zheng holds a degree from Zhengzhou University. Mr. Zheng's in-depth working experience as vice manager at Hongli, his knowledge and his lengthy working experience in the Chinese coal and materials industries qualify him to serve on the Board and led the Nominating Committee to conclude that he should be nominated to serve another term as a director.

**Defendant Jiang**

41.     Defendant Yushan Jiang ("Jiang") has served as a Company director since at least 2011, and is a member of the Audit Committee.

42.     For the fiscal year ended June 30, 2015 Defendant Jiang received $10,000 in compensation from the Company in the form of fees earned or paid in cash.

43.     The Company's 2017 Proxy Statement stated the following about Defendant Jiang:

**Yushan Jiang** has served as the chief executive officer of Pingdingshan Coal Group's Shoushan Coking Co., Ltd. since February 2007. From 2001 to 2007, he was chief engineer at Henan Tianhong Coking Company. Mr. Jiang gained extensive experience in the coking industry as he held numerous positions since 1972 as a worker, director, and head of research and development for various coking operations. Mr. Jiang is also currently a vice-director and member of the Coking Committee of the Henan Province Metals Association, and vice-secretary of the Henan Province Institute of Coal & Coke. Mr. Jiang holds a bachelor's degree in coal and chemistry from the Wuhan College of Iron & Steel. Mr. Jiang's extensive working and leadership experience in the coking industry and his educational background qualify him to serve on the Board and led the Nominating Committee to conclude that he should be nominated to serve another term as a director.

### Defendant Huang

44.    Defendant Hui Huang ("Huang") has served as a Company director since at least 2011, and is a member of the Audit Committee.

45.    For the fiscal year ended June 30, 2015 Defendant Huang received $10,000 in compensation from the Company in the form of fees earned or paid in cash.

46.    The Company's 2017 Proxy Statement stated the following about Defendant Huang:

**Hui Huang** is the chairman and chief executive officer of Wuhan Pingdingshan Coal and Wuhan Steel Unification Coking Company ("WPCWSUCC"). Mr. Huang has also served as director of sales and administration of the same company from 1985 to 1996. He then served as director of the Economics and Technology Cooperation Center of the Pingdingshan Coal Group (now WPCWSUCC) from 1996 to 2008. Mr. Huang is also a director of the China Association of Comprehensive Resource Utilization, a vice-director of the Henan Institute of Coal (a branch of the China Association of Comprehensive Resource Utilization), and vice-secretary of the Pingdingshan Youth Union. Mr. Huang holds a bachelor's degree in economic management and an MBA from the University of Mining and Technology. Mr. Huang's vast experience in the coal and coking industry and in management as an executive officer and director of WPCWSUCC, and as a leader in various coal industry related associations, led our Nominating Committee to conclude that he should be nominated to serve another term as a director.

### Defendant Zhang

47.     Defendant Haoyi Zhang ("Zhang") has served as a Company director since at least 2011, and is Chair of the Audit Committee.

48.     For the fiscal year ended June 30, 2015 Defendant Zhang received $10,000 in compensation from the Company in the form of fees earned or paid in cash.

49.     The Company's 2017 Proxy Statement stated the following about Defendant Zhang:

> **Haoyi Zhang** serves as the chief financial officer of Henan Pinggao Electricity Ltd., one of the major A-Share public companies traded on the Shanghai Stock Exchange, a position he has held since January 2005. From April 2004 to March 2009, he served as the chief accountant of Henan Pinggao DongZhi Gao Ya Kaiguan Ltd., a Sino-Japanese joint venture with Toshiba. Mr. Zhang held numerous positions at China Beifang Industry Company, Xiamen Branch, from July 1995 to March 2004, including as the deputy director, the director, the deputy chief accountant, the assistant general manager and the chief accountant. Mr. Zhang holds a bachelor's degree in accounting from Xiamen University and an EMBA degree from Xian Jiaotong University. Mr. Zhang's extensive financial and accounting experience at numerous Chinese companies and his educational background qualify him to serve on the Board and led the Nominating Committee to conclude that he should be nominated to serve another term as a director.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

50.     By reason of their positions as officers, directors and/or fiduciaries of Hongli and because of their ability to control the business and corporate affairs of Hongli, the Individual Defendants owed Hongli and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Hongli in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Hongli and its shareholders so as to benefit all shareholders equally.

51.     Each director and officer of the Company owes to Hongli and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

52.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Hongli, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

53.     Each Individual Defendant, by virtue of his position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Hongli, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised Hongli's Board at all relevant times.

54.     To discharge their duties, the officers and directors of Hongli were required to exercise reasonable and prudent supervision over the management, policies, practices, operations, and internal controls of the Company. By virtue of such duties, the officers and directors of Hongli were required to, among other things:

(a)      ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of the United States, and pursuant to Hongli's own Code of Business Conduct and Ethics and internal guidelines;

(b)      conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)      remain informed as to how Hongli conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)      establish and maintain systematic and accurate records and reports of the business and internal affairs of Hongli and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)      maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Hongli's operations would comply with all laws and Hongli's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)      exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)      refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)　　examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

55.　　Each of the Individual Defendants further owed to Hongli and the shareholders the duty of loyalty requiring that each favor Hongli's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

56.　　At all times relevant hereto, the Individual Defendants were the agents of each other and of Hongli and were at all times acting within the course and scope of such agency.

57.　　Because of their advisory, executive, managerial, and directorial positions with Hongli, each of the Individual Defendants had access to adverse, non-public information about the Company.

58.　　The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Hongli.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

59.　　In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

60.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, insider transactions, unjust enrichment, waste of corporate assets, abuse of control, and gross mismanagement; (ii) conceal adverse information concerning the Company's operations, financial condition, competitors, future business prospects, and internal controls; and (iii) artificially inflate the Company's stock price.

61.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully or recklessly to conceal material facts, fail to correct such misrepresentations, fail to maintain adequate internal controls, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority and approval of the Board, each of the Individual Defendants who are directors of Hongli was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

62.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his overall contribution to and furtherance of the wrongdoing.

63.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Hongli, and was at all times acting within the course and scope of such agency.

## HONGLI'S CODE OF ETHICS

64.     Per the Company's Code of Business Conduct and Ethics (the "Code of Ethics"), Hongli adopted the Code of Ethics for directors, executive officers, and employees of the Company and they "are expected to: . . . comply with this Code and all applicable laws, rules and regulations; [] report any violation of this Code of which [they] become aware; and [] be accountable for complying with this Code."

65.     The Code of Ethics has the following six stated objectives:

• honest and ethical conduct;

• avoidance of conflicts of interest;

• full, fair, accurate, timely and transparent disclosure;

• compliance with applicable government and self-regulatory organization laws, rules and regulations;

• prompt internal reporting of Code violations; and

• accountability for compliance with the Code.

66.     The Code of Ethics provides, in relevant part, as to "Accounting Policies," that:

 The Company will make and keep books, records and accounts, which in reasonable detail accurately and fairly present the Company's transactions.

***All directors, officers, employees and other persons are prohibited from directly or indirectly falsifying or causing to be false or misleading any financial or accounting book, record or account*** . . . The commission of, or participation in, one of these prohibited activities or other illegal conduct will subject you to federal penalties, as well as to punishment, up to and including termination of employment. No director, officer or employee of the Company may directly or indirectly make or cause to be made a materially false or misleading statement, or omit to state, or cause another person to omit to state, any material fact necessary to make statements made not misleading, in connection with the audit of financial statements by independent accountants, the preparation of any required reports

16

whether by independent or internal accountants, or any other work which involves or relates to the filing of a document with the Securities and Exchange Commission("*SEC*").

(Emphasis added.)

67.     The Code of Ethics provides, as to "Disclosure Policies and Controls," that:

The continuing excellence of the Company's reputation depends upon our full and complete disclosure of important information about the Company that is used in the securities marketplace. Our financial and nonfinancial disclosures and filings with the SEC must be transparent, accurate and timely. Proper reporting of reliable, truthful and accurate information is a complex process involving cooperation between many departments and disciplines. We must all work together to insure that reliable, truthful and accurate information is disclosed to the public.

***The Company must disclose to the SEC, current security holders and the investing public information that is required, and any additional information that may be necessary to ensure the required disclosures are not misleading or inaccurate. The Company requires you to participate in the disclosure process, which is overseen by our CEO and principal accounting officer.*** The disclosure process is designed to record, process, summarize and report material information as required by all applicable laws, rules and regulations. Participation in the disclosure process is a requirement of a public company, and full cooperation and participation by our CEO, principal accounting officer and, upon request, other employees in the disclosure process is a requirement of this Code.

Officers and employees must fully comply with their disclosure responsibilities in an accurate and timely manner or be subject to discipline of up to and including termination of employment.

(Emphasis added.)

68.     In violation of the Code of Ethics, the Individual Defendants (as key officers and as members of the Company's Board) consciously disregarded their duties to: (1) maintain proper quality of public disclosures; (2) maintain accurate records; (3) maintain fiduciary duties; and (4) comply with laws, rules, and regulations.

## HONGLI'S AUDIT COMMITTEE CHARTER

69.     Pursuant to its Charter, the Audit Committee will monitor and review:

17

- The integrity of the Company''s financial reports and other financial information provided by the Company to the public or any governmental body;
- The Company''s compliance with applicable legal and regulatory requirements;
- The qualifications and independence of the Company's independent auditing firm; and
- The performance of the Company''s independent auditors and the Company''s Internal audit function.

## INDIVIDUAL DEFENDANTS' MISCONDUCT

### Background

70.     The legal entity that is now Hongli was initially incorporated in Florida as J.B. Financial Services, Inc. ("J.B. Financial") in September 1996. This entity laid dormant for several years, with no expenses, assets, liabilities, material business or revenues.

71.     In 1996, Henan Province Pingdingshan Hongli Coal & Coke Co. Ltd. was founded by J. Lv after he left Henan Province Pingdingshan Coal Group.

72.     In July of 1999, J.B. Financial changed its name to Ableauctions.com, Inc ("Ableauctions"), a firm which operated in the areas of real estate and online auctions.

73.     In 2008, Top Favour Limited (BVI) Holding Company ("Top Favour") was established, which indirectly controlled Henan Province Pingdingshan Hongli Coal & Coke Co. Ltd.

74.     In 2009, the shareholders of Ableauctions approved a share exchange agreement under wihich Top Favour became a wholly owned subsidiary of Ableauctions and Top Favour shareholders received 13,117,952 shares representing approximately 97% of Abluauctions's outstanding shares (the "Share Exchange").

75.     Following the completion of the Share Exchange, the Company changed its name from Ableauctions to "SinoCoking Coal & Coke Chemical Industries Inc," and traded on the NASDAQ under the symbol "SCOK."

76.     At the Company's June 30, 2015 annual meeting, a majority of common stockholders voted to change the Company's name again to Hongli Clean Energy Technologies Corp. The name change was effective as of July 13, 2015, and the Company began trading on the NASDAQ under that name and the new symbol "CETC" on July 28, 2015.

77.     On September 29, 2015, the Company received a delisting notice from the NASDAQ because of its failure to maintain a minimum bid price of $1.00 per share in compliance with NASDAQ Continued Listing Rule 5550(a)(2).

78.     The Company was unable to raise its stock price, and continued to receive such notices over the following year.

79.     The Company effectuated a 1-for-10 reverse stock split on October 27, 2016, which had the effect of raising the price per share above $1.00.

**False & Misleading Statements**

*The 2015 Proxy Statement*

80.     The Company's Schedule 14A filed with the SEC on March 29, 2015 (the "2015 Proxy Statement"), stated that the Company's "Board adopted a Code of Ethics that applies to all officers, directors and employees of the Company. We intend to maintain the highest standards of ethical business practices and compliance with all laws and regulations applicable to our business."

81.     The 2015 Proxy statement was false and misleading because, despite assertions to the contrary, its Code of Ethics was not followed, resulting in—and evidenced by—the Company's failure to properly record the impairment of assets.

*The 2015 Proxy Statement also failed to disclose that the Company: (1) failed to properly record the impairment of assets; (2) filed false and misleading statements with the SEC, specifically with respect to the value of its assets; and (3) failed to maintain internal controls.The 2014/2015 10-K*

82.     On October 13, 2015, the Company filed with the SEC its annual report on Form 10-K for the fiscal year ended June 30, 2015 (the "2014/2015 10-K").

83.     The 2014/2015 10-K failed to properly record the impairment of assets. The 2014/2015 10-K contained the following consolidated balance sheet, which overstated assets as of June 30, 2015 due to the Company's understatement of impairment of its assets and loss on disposal of assets for the fiscal year ended June 30, 2015:

### HONGLI CLEAN ENERGY TECHNOLOGIES CORP. AND SUBSIDIARIES
### CONSOLIDATED BALANCE SHEETS

|  | June 30, | |
|---|---|---|
|  | 2015 | 2014 |
| **ASSETS** | | |
| **CURRENT ASSETS** | | |
| Cash | $ 81,605 | $ 191,992 |
| Accounts receivable, net | 13,970,451 | 8,946,435 |
| Other receivables and deposits | 4,928,967 | 5,787,232 |
| Loans receivable | - | 8,032,037 |
| Inventories | 3,191,605 | 7,419,821 |
| Advances to suppliers | 8,216,127 | 8,700,022 |
| Prepaid expenses | 16,670 | - |
| Total current assets | 30,405,425 | 39,077,539 |
| | | |
| PLANT AND EQUIPMENT, net | 18,750,242 | 14,426,319 |
| | | |
| CONSTRUCTION IN PROGRESS | 65,420,768 | 40,389,961 |
| | | |
| **OTHER ASSETS** | | |
| Security deposit | - | 4,873,928 |
| Prepayments | 19,674,034 | 61,815,632 |
| Intangible assets, net | 56,355,185 | 32,305,697 |
| Long-term investments | 2,920,247 | 2,898,233 |
| Other assets | 114,589 | 113,725 |
| Total other assets | 79,064,055 | 102,007,215 |
| | | |
| Total assets | $ 193,640,490 | $ 195,901,034 |
| **LIABILITIES AND EQUITY** | | |
| **CURRENT LIABILITIES** | | |
| Current maturity of long-term loans | $ 44,471,220 | $ 20,795,425 |
| Accounts payable, trade | 70,164 | 2,978,326 |
| Other payables and accrued liabilities | 4,503,689 | 2,460,113 |

| | | |
|---|---:|---:|
| Other payables - related party | 736,596 | 526,699 |
| Acquisition payable | 4,747,250 | 4,711,463 |
| Customer deposits | 80,306 | 79,701 |
| Taxes payable | 907,472 | 765,421 |
| Current portion of warrants liability | 289,481 | - |
| Total current liabilities | 55,806,178 | 32,317,148 |
| | | |
| **LONG-TERM LIABILITIES** | | |
| Long-term loans | - | 29,243,566 |
| Warrants liability | 2,626,168 | 16 |
| Total long-term liabilities | 2,626,168 | 29,243,582 |
| | | |
| Total liabilities | 58,432,346 | 61,560,730 |
| | | |
| **COMMITMENTS AND CONTINGENCIES** | | |
| | | |
| **EQUITY** | | |
| Common stock, $0.001 par value, 100,000,000 shares authorized, 23,960,217 shares and 21,121,372 shares issued and outstanding as of June 30, 2015 and 2014, respectively | 23,960 | 21,121 |
| Additional paid-in capital | 6,846,397 | 3,592,053 |
| Statutory reserves | 3,689,941 | 3,689,941 |
| Retained earnings | 108,831,633 | 112,295,407 |
| Accumulated other comprehensive income | 11,484,613 | 10,410,182 |
| Total SinoCoking Coal and Coke Chemicals Industries, Inc's equity | 130,876,544 | 130,008,704 |
| | | |
| NONCONTROLLING INTERESTS | 4,331,600 | 4,331,600 |
| | | |
| Total equity | 135,208,144 | 134,340,304 |
| | | |
| Total liabilities and equity | $ 193,640,490 | $ 195,901,034 |

84.    The 2014/2015 10-K also failed to disclose that the Company failed to maintain internal controls.

85.    The 2014/2015 10-K was signed by Defendants J. Lv, S. Lv, Huang, Zhang, Jiang, and Zheng.

86.    Attached to the 2014/2015 10-K were certifications pursuant to Rule 13a-14(a) and 15d-14(a) of the Securities Exchange Act of 1934, Section 302 of the Sarbanes-Oxley Act of 2002 ("SOX"), and 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the SOX, signed by Defendants J. Lv and S. Lv, attesting to the accuracy of the 2014/2015 10-K.

**The 2015/2016 Q1 10-Q**

87.     On November 13, 2015, the Company filed with the SEC its quarterly report on Form 10-Q for the fiscal quarter ended September 30, 2015 (the "2015/2016 Q1 10-Q").

88.     The 2015/2016 Q1 10-Q f failed to properly record the impairment of assets. The 2015/2016 Q1 10-Q contained the following consolidated balance sheet, which overstated assets as of September 30, 2015 due to the Company's understatement of impairment of its assets and loss on disposal of assets for the fiscal year ended June 30, 2015:

### HONGLI CLEAN ENERGY TECHNOLOGIES CORP. AND SUBSIDIARIES

### CONSOLIDATED BALANCE SHEETS

|  | | September 30, 2015 | | June 30, 2015 |
|---|---|---|---|---|
|  | | (Unaudited) | | |
| **ASSETS** | | | | |
| **CURRENT ASSETS** | | | | |
| Cash | $ | 139,233 | $ | 81,605 |
| Accounts receivable, net | | 15,953,238 | | 13,970,451 |
| Other receivables and deposits | | 8,473 | | 4,928,967 |
| Inventories | | 5,947,825 | | 3,191,605 |
| Advances to suppliers | | 4,088,692 | | 8,216,127 |
| Prepaid expenses | | - | | 16,670 |
| Total current assets | | 26,137,461 | | 30,405,425 |
| | | | | |
| PLANT AND EQUIPMENT, net | | 24,025,967 | | 18,750,242 |
| | | | | |
| CONSTRUCTION IN PROGRESS | | 56,597,357 | | 65,420,768 |
| | | | | |
| **OTHER ASSETS** | | | | |
| Security deposit | | - | | - |
| Prepayments | | 18,915,410 | | 19,674,034 |
| Intangible assets, net | | 54,021,548 | | 56,355,185 |
| Long-term investments | | 2,807,643 | | 2,920,247 |
| Other assets | | 110,170 | | 114,589 |
| Total other assets | | 75,854,771 | | 79,064,055 |
| | | | | |
| Total assets | $ | 182,615,556 | $ | 193,640,490 |
| | | | | |
| **LIABILITIES AND EQUITY** | | | | |
| | | | | |
| **CURRENT LIABILITIES** | | | | |
| Current maturity of long term loans | $ | 43,159,496 | $ | 44,471,220 |
| Accounts payable, trade | | 275,501 | | 70,164 |
| Other payables and accrued liabilities | | 5,735,039 | | 4,503,689 |
| Other payables - related party | | 506,464 | | 736,596 |
| Acquisition payable | | - | | 4,747,250 |
| Customer deposits | | 77,210 | | 80,306 |

| | | |
|---|---:|---:|
| Taxes payable | 977,399 | 907,472 |
| Current portion of warrants liability | - | 289,481 |
| Total current liabilities | 50,731,109 | 55,806,178 |
| | | |
| LONG TERM LIABILITIES | | |
| Warrants liability | 380,237 | 2,626,168 |
| Total long term liabilities | 380,237 | 2,626,168 |
| | | |
| Total liabilities | 51,111,346 | 58,432,346 |
| | | |
| COMMITMENTS AND CONTINGENCIES | | |
| | | |
| EQUITY | | |
| Common stock, $0.001 par value, 100,000,000 shares authorized, 23,960,217 shares issued and outstanding as of September 30 and June 30, 2015, respectively | 23,960 | 23,960 |
| Additional paid-in capital | 6,846,397 | 6,846,397 |
| Statutory reserves | 3,689,941 | 3,689,941 |
| Retained earnings | 110,539,595 | 108,831,633 |
| Accumulated other comprehensive income | 6,072,717 | 11,484,613 |
| Total Hongli Clean Energy Technologies Corp.'s equity | 127,172,610 | 130,876,544 |
| | | |
| NONCONTROLLING INTERESTS | 4,331,600 | 4,331,600 |
| | | |
| Total equity | 131,504,210 | 135,208,144 |
| | | |
| Total liabilities and equity | $ 182,615,556 | $ 193,640,490 |

89.     The 2015/2016 Q1 10-Q also failed to disclose that the Company failed to maintain internal controls.

90.     The 2015/2016 Q1 10-Q was signed by Defendants J. Lv and S. Lv.

91.     Attached to the 2015/2016 Q1 10-Q were SOX certifications signed by Defendants J. Lv and S. Lv, attesting to the accuracy of the 2015/2016 Q1 10-Q.

***The 2015/2016 Q2 10-Q***

92.     On February 16, 2016, the Company filed with the SEC its quarterly report on Form 10-Q for the fiscal quarter ended December 31, 2015 (the "2015/2016 Q2 10-Q").

93.     The 2015/2016 Q2 10-Q failed to properly record the impairment of assets. The 2015/2016 Q2 10-Q contained the following consolidated balance sheet, which overstated assets

as of December 31, 2015 due to the Company's understatement of impairment of its assets and loss on disposal of assets for the fiscal year ended June 30, 2015:

## HONGLI CLEAN ENERGY TECHNOLOGIES CORP. AND SUBSIDIARIES

## CONSOLIDATED BALANCE SHEETS

| | December 31, 2015 | June 30, 2015 |
|---|---|---|
| | (Unaudited) | |
| **ASSETS** | | |
| **CURRENT ASSETS** | | |
| Cash | $ 46,832 | $ 81,605 |
| Accounts receivable, net | 13,654,667 | 13,970,451 |
| Other receivables and deposits | 8,605 | 4,928,967 |
| Inventories | 1,772,932 | 3,191,605 |
| Advances to suppliers | 2,689,182 | 8,216,127 |
| Prepaid expenses | - | 16,670 |
| Total current assets | 18,172,218 | 30,405,425 |
| | | |
| PLANT AND EQUIPMENT, net | 21,076,180 | 18,750,242 |
| | | |
| CONSTRUCTION IN PROGRESS, net | 32,194,455 | 65,420,768 |
| | | |
| **OTHER ASSETS** | | |
| Prepayments | 18,513,600 | 19,674,034 |
| Intangible assets, net | 33,687,664 | 56,355,185 |
| Long-term investments | 2,748,002 | 2,920,247 |
| Other assets | 107,830 | 114,589 |
| Total other assets | 55,057,096 | 79,064,055 |
| | | |
| Total assets | $ 126,499,949 | $ 193,640,490 |
| | | |
| **LIABILITIES AND EQUITY** | | |
| | | |
| **CURRENT LIABILITIES** | | |
| Current maturity of long term loans | $ 40,016,826 | $ 44,471,220 |
| Accounts payable, trade | 390,564 | 70,164 |
| Other payables and accrued liabilities | 2,859,271 | 4,503,689 |
| Other payables - related party | 496,074 | 736,596 |
| Acquisition payable | - | 4,747,250 |
| Customer deposits | 75,570 | 80,306 |
| Taxes payable | 1,329,366 | 907,472 |
| Current portion of warrants liability | - | 289,481 |
| Total current liabilities | 45,167,671 | 55,806,178 |
| | | |
| **LONG TERM LIABILITIES** | | |
| Warrants liability | 111,094 | 2,626,168 |
| Total long term liabilities | 111,094 | 2,626,168 |
| | | |
| Total liabilities | 45,278,765 | 58,432,346 |

COMMITMENTS AND CONTINGENCIES

| EQUITY | | |
|---|---:|---:|
| Common stock, \$0.001 par value, 100,000,000 shares authorized, 23,960,217 shares issued and outstanding as of December 31 and June 30, 2015, respectively | 23,960 | 23,960 |
| Additional paid-in capital | 6,846,397 | 6,846,397 |
| Statutory reserves | 3,689,941 | 3,689,941 |
| Retained earnings | 61,850,183 | 108,831,633 |
| Accumulated other comprehensive income | 4,479,103 | 11,484,613 |
| Total Hongli Clean Energy Technologies Corp.'s equity | 76,889,584 | 130,876,544 |
| NONCONTROLLING INTERESTS | 4,331,600 | 4,331,600 |
| Total equity | 81,221,184 | 135,208,144 |
| Total liabilities and equity | \$  126,499,949 | \$  193,640,490 |

94.     The 2015/2016 Q2 10-Q also failed to disclose that the Company failed to maintain internal controls.

95.     The 2015/2016 Q2 10-Q was signed by Defendants J. Lv and S. Lv.

96.     Attached to the 2015/2016 Q2 10-Q were SOX certifications signed by Defendants J. Lv and S. Lv, attesting to the accuracy of the 2015/2016 Q2 10-Q.

### *The 2016 Proxy Statement*

97.     The Company's Schedule 14A filed with the SEC on March 12, 2016 (the "2016 Proxy Statement"), states that the Company's "Board adopted a Code of Ethics that applies to all officers, directors and employees of the Company. We intend to maintain the highest standards of ethical business practices and compliance with all laws and regulations applicable to our business."

98.     The 2016 Proxy statement was false and misleading because, despite assertions to the contrary, its Code of Business Conduct and Ethics was not followed, resulting in—and evidenced by—the Company's failure to properly record the impairment of assets.

99.     The 2016 Proxy Statement also failed to disclose that the Company: (1) failed to properly record the impairment of assets; (2) filed false and misleading statements with the SEC, specifically with respect to the value of its assets; and (3) failed to maintain internal controls..

25

*The 2015/2016 Q3 10-Q*

100.    On May 23, 2016, the Company filed with the SEC its quarterly report on Form 10-Q for the fiscal quarter ended March 31, 2016 (the "2015/2016 Q3 10-Q").

101.    The 2015/2016 Q3 10-Q failed to properly record the impairment of assets. The 2015/2016 Q3 10-Q contained the following consolidated balance sheet, which overstated the impairment of assets and loss on disposal of assets during the nine-month period ended March 31, 2016 due to the Company's understatement of impairment of its assets and loss on disposal of assets for the fiscal year ended June 30, 2015:

### HONGLI CLEAN ENERGY TECHNOLOGIES CORP. AND SUBSIDIARIES

### CONSOLIDATED BALANCE SHEETS

| | March 31, 2016 (Unaudited) | June 30, 2015 |
|---|---|---|
| **ASSETS** | | |
| **CURRENT ASSETS** | | |
| Cash | $ 67,522 | $ 81,605 |
| Accounts receivable, net | 3,532,687 | 13,970,451 |
| Other receivables and deposits | 6,440,435 | 4,928,967 |
| Inventories | 710,519 | 3,191,605 |
| Advances to suppliers | - | 8,216,127 |
| Prepaid expenses | - | 16,670 |
| Total current assets | 10,751,163 | 30,405,425 |
| | | |
| PLANT AND EQUIPMENT, net | 14,464,389 | 18,750,242 |
| | | |
| CONSTRUCTION IN PROGRESS, net | - | 65,420,768 |
| | | |
| **OTHER ASSETS** | | |
| Prepayments | - | 19,674,034 |
| Intangible assets, net | 1,603,655 | 56,355,185 |
| Long-term investments | 1,240,435 | 2,920,247 |
| Other assets | - | 114,589 |
| Total other assets | 2,844,090 | 79,064,055 |
| | | |
| Total assets | $ 28,059,642 | $ 193,640,490 |
| | | |
| **LIABILITIES AND EQUITY** | | |
| | | |
| **CURRENT LIABILITIES** | | |
| Current maturity of long term loans | $ 273,769 | $ 44,471,220 |
| Accounts payable, trade | 182,214 | 70,164 |
| Other payables and accrued liabilities | 698,751 | 4,503,689 |

| | | |
|---|---:|---:|
| Other payables - related party | 576,075 | 736,596 |
| Acquisition payable | - | 4,747,250 |
| Customer deposits | - | 80,306 |
| Taxes payable | 360,746 | 907,472 |
| Current portion of warrants liability | - | 289,481 |
| Total current liabilities | 2,091,555 | 55,806,178 |
| | | |
| **LONG TERM LIABILITIES** | | |
| Long term loans | - | - |
| Warrants liability | 111,094 | 2,626,168 |
| Total long term liabilities | 111,094 | 2,626,168 |
| | | |
| Total liabilities | 2,202,649 | 58,432,346 |
| | | |
| **COMMITMENTS AND CONTINGENCIES** | | |
| | | |
| **EQUITY** | | |
| Common stock, $0.001 par value, 100,000,000 shares authorized, 23,960,217 shares  issued and outstanding as of March 31, 2016 and June 30, 2015, respectively | 23,960 | 23,960 |
| Additional paid-in capital | 6,318,600 | 6,846,397 |
| Statutory reserves | 2,064,961 | 3,689,941 |
| Retained earnings | 12,557,470 | 108,831,633 |
| Accumulated other comprehensive income | 4,892,002 | 11,484,613 |
| Total Hongli Clean Energy Technologies Corp's equity | 25,856,993 | 130,876,544 |
| | | |
| NONCONTROLLING INTERESTS | - | 4,331,600 |
| | | |
| Total equity | 25,856,993 | 135,208,144 |
| | | |
| Total liabilities and equity | $ 28,059,642 | $ 193,640,490 |

102.    The 2015/2016 Q3 10-Q also failed to disclose that the Company failed to maintain internal controls.

103.    The 2015/2016 Q3 10-Q was signed by Defendants J. Lv and S. Lv.

104.    Attached to the 2015/2016 Q3 10-Q were SOX certifications signed by Defendants J. Lv and S. Lv, attesting to the accuracy of the 2015/2016 Q3 10-Q.

**The Truth Emerges**

105.    On August 9, 2016, S. Lv resigned as Hongli's CFO and Treasurer.

106.    On September 29, 2016, the Company filed a Notification of Late Filing with respect to is Form 10-K for the fiscal year ended June 30, 2016 on Form 12b-25, citing an Assets

and Business Transfer Agreement between a subsidiary of Hongli and an unrelated party which had not been completed.

107.    On October 12, 2016, Hongli received a Determination letter from NASDAQ that its failure to file its Form 10-K for the fiscal year ended June 30, 2016 (the "2015/2016 10-K") could serve as a basis for delisting the Company's stock. Hongli requested and received several extensions from NASDAQ to timely file its 2015/2016 10-K.

108.    Ultimately, on April 7, 2017, Hongli received a determination letter from NASDAQ notifying the company that NASDAQ's Hearings Panel had determined that Hongli's stock would be delisted from the exchange and trading in Hongli common stock would be suspended beginning on April 11, 2017 as a result of Hongli's continued failure to file its 2015/2016 10-K.

109.    On April 21, 2017, Hongli filed a Form 8-K (the "April 21 8-K") with the SEC reporting that it had dismissed its independent auditor, KSP, a firm it had engaged as its independent auditor less than a year earlier on August 29, 2016. In its filing, the Company averred that KSP was dismissed because "it fears that KSP may be viewed as a successor to the firm Kabani & Kabani, whose registration was recently revoked by the PCAOB. KSP apparently does not hold itself out as a successor organization, and remains in good standing with the PCAOB, but the registrant decided to find a new auditor nonetheless."

110.    The April 21 8-K further claimed that "there have been (i) no disagreements between the registrant and KSP on any matters of accounting principles or practices, financial statement disclosure, or auditing scope or procedures, which disagreements, if not resolved to the satisfaction of KSP, would have caused KSP to make reference to the subject matter of the disagreement in its reports on the registrant's financial statements for such periods, and (ii) no

adverse opinions, qualifications, disagreements or reportable events within the meaning set forth in Item 304(a)(1)(ii), (iv) or (v) of Regulation S-K."

111.    With respect to KSP's position, the April 21 8-K stated: "The registrant provided KSP with a copy of the disclosures contained herein and requested that KSP furnish it with a letter addressed to the Securities and Exchange Commission stating whether or not KSP agrees with its statements in this Item 4.01. A copy of the letter, if any, furnished by KSP in response to such request, will be filed as Exhibit 16 to an amendment to this Form 8-K filed promptly after receipt thereof."

112.    On April 26, 2017, the Company issued a Form 8-K/A, which clarified that there was, in fact, a reportable disagreement between KSP and Hongli. Specifically, the Form 8-K/A stated:

> KSP has advised the registrant that KSP believes a disagreement existed with the registrant at the time KSP was advised of its dismissal. Specifically, KSP believes that the registrant needed to obtain a valuation report from an independent valuation firm to assess whether certain assets reflected in the financial statements of the registrant were properly valued at the time of acquisition and net of impairment during subsequent periods. KSP's position is based on its belief that the significant impairment and loss on disposal recorded during the period ended March 31, 2016 may have occurred prior to that period.

113.    Attached to the Form 8-K/A was a letter from KSP (the "KSP Letter") indicating that the April 21 8-K had not been provided to KSP for review before filing.

114.    With respect to the disagreement, the KSP Letter noted that it believed that impairment of assets and loss on disposal had not been properly reported, and should have been recorded prior to the period ended March 31, 2016. Specifically, the letter stated:

> The Company engaged us as the auditor on August 29, 2016, to audit the financial statements for the year ended June 30, 2016. Prior to our engagement as the auditor, the Company filed its 10K for the year ended June 30, 2015 on October 13, 2015. The 10K contained the financial statement audited by another auditor, reflecting the total assets of $193,640,490. Subsequently on May 23, 2016, the Company filed

a 10Q for the period ended March 31, 2016. *The financial statements included in the 10Q for the period ended March 31, 2016, reviewed by another auditor, showed the total assets of $28,059,642, thereby showing the total impairment of $44,892,912 and the total loss on disposal of assets amounting $61,347,381. We did not agree with the Company that the entire loss (Impairment as well as loss on disposal) of $106,240,293 occurred in the nine-month period ended June 30, 2016. We believe that the impairment of these assets did not occur instantly in the period ended March 31, 2016, but occurred prior to July 1, 2015. Therefore, all the prior financial statements (audited as well as reviewed) and filed with the Securities and Exchange Commission, should be re-evaluated based upon actual valuation of the assets on each Balance Sheet date, and be restated to reflect the assets at the impaired amounts.* We believe that the impairment expenses related to these assets should have been recorded in the respective periods when the impairments actually occurred. *We had communicated this matter to the management of the company and had suggested to the management to engage an independent valuation firm to value the assets of the company in the prior periods, to evaluate the true value of impairment in each period.* To the date of our termination, we had not received a final valuation report from an independent valuation Company. Therefore, we were unable to finish the audit.

(Emphasis added.)

115.    As a result of Hongi's misrepresentation of KSP's opinions, which KSP stated in its letter had been communicated to the Company, statements made in the April 21 8-K that there were no material disagreements between Hongli and KSP at the time of KSP's termination were false and misleading.

**The Wrongdoing Continues**

116.    The Company ultimately filed its 2015/2016 10-K on July 19, 2017, which was signed by Defendants J. Lv, Huang, Zhang, Jiang, and Zheng.

117.    Despite the lengthy delay in filing, and the information revealed by KSP, the 2015/2016 10-K presented balance sheet figures for the fiscal year ended June 30, 2016 identical to those previously reported in the Company's  2014/2015 10-K. Therefore, the 2015/2016 10-K overstated assets as of June 30, 2015 due to the Company's understatement of impairment of its

assets and loss on disposal of assets for the fiscal year ended June 30, 2015. The 2015/2016 10-K contained the following consolidated balance sheet:

HONGLI CLEAN ENERGY TECHNOLOGIES CORP. AND SUBSIDIARIES

CONSOLIDATED BALANCE SHEETS

|  | June 30 2016 | June 30 2015 |
|---|---|---|
| **ASSETS** | | |
| **CURRENT ASSETS** | | |
| Cash | $ 40,523 | $ 81,605 |
| Accounts receivable, trade | - | 13,970,451 |
| Other receivables and deposits | 2,492 | 4,928,967 |
| Inventories | 102,504 | 3,191,605 |
| Advances to suppliers | - | 8,216,127 |
| Prepaid expenses | - | 16,670 |
| Total current assets | 145,519 | 30,405,425 |
| | | |
| PLANT AND EQUIPMENT, net | 26,631 | 18,750,242 |
| | | |
| CONSTRUCTION IN PROGRESS | 37,004,732 | 65,420,768 |
| | | |
| **OTHER ASSETS** | | |
| Prepayments | - | 19,674,034 |
| Intangible assets, net | - | 56,355,185 |
| Long-term investments | 1,204,032 | 2,920,247 |
| Other assets | 105,353 | 114,589 |
| Total other assets | 1,309,385 | 79,064,055 |
| | | |
| Total assets | $ 38,486,267 | $ 193,640,490 |
| | | |
| **LIABILITIES AND EQUITY** | | |
| | | |
| **CURRENT LIABILITIES** | | |
| Current maturity of long term loan | $ - | $ 44,471,220 |
| Accounts payable, trade | 22,064 | 70,164 |
| Other payables and accrued liabilities | 3,922,171 | 4,503,689 |
| Other payables - related parties | 870,660 | 736,596 |
| Acquisition payable | - | 4,747,250 |
| Customer deposits | - | 80,306 |
| Taxes payable | 854,102 | 907,472 |
| Current portion of warrants liability | 40,884 | 289,481 |
| Total current liabilities | 5,709,881 | 55,806,178 |
| | | |
| **LONG TERM LIABILITIES** | | |
| Warranty liability | 40,884 | 2,626,168 |
| Total long term liabilities | 40,884 | 2,626,168 |
| | | |
| Total liabilities | 5,750,765 | 58,432,346 |
| | | |
| **COMMITMENTS AND CONTINGENCIES** | | |

| EQUITY | | |
| --- | --- | --- |
| Common stock, $0.001 par value, 100,000,000 shares authorized, 2,396,021 shares issued and outstanding (given retroactive effect to the 1-for-10 reverse stock split effective October 27, 2016 | 2,396 | 2,396 |
| Additional paid-in capital | 6,867,961 | 6,867,961 |
| Statutory reserves | 3,689,941 | 3,689,941 |
| Retained earnings | 18,940,333 | 108,831,633 |
| Accumulated other comprehensive income | 3,234,871 | 11,484,613 |
| Total SinoCoking Coal and Coke Chemicals Industries, Inc's equity | 32,735,502 | 130,876,544 |
| | | |
| NONCONTROLLING INTERESTS | - | 4,331,600 |
| | | |
| Total equity | 32,735,502 | 135,208,144 |
| | | |
| Total liabilities and equity | $ 38,486,267 | $ 193,640,490 |

118.    The 2015/2016 10-K also failed to disclose that the Company failed to maintain internal controls.

119.    Attached to the 2015/2016 10-K were SOX certifications signed by Defendant J. Lv, attesting to the accuracy of the 2015/2016 10-K.

120.    Since the Company's late filing of its 2015/2016 10-K on July 19, 2017, the Company has failed to file with the SEC Form 10-Qs for every quarter beginning with the quarter ended on September 30, 2016 through the quarter ended on September 30, 2017 and the Form 10-K for the fiscal year ended on June 30, 2017.

121.    The failure to file these legally mandated reports with the SEC is a breach of the Directors' fiduciary duties. In the absence of such reports, the shareholders have been left in the dark as to the Company's financial performance and business activities.

122.    Additionally, the Individual Defendants caused the Company to default in the Securities Class Action.  The Securities Class Action was filed against the Company on May 8, 2017. The Company was served in that suit on October 2, 2017, with answer from the Company due on October 23, 2017. Defendants J. Lv, Zheng, Jiang, Huang, and Zhang caused the Company to fail to appear or answer the Complaint in the Securities Class Action, thus breaching their

fiduciary duties. As a result, a default was entered against the Company in the Securities Class Action on November 7, 2017, subjecting it to potentially millions of dollars in liability.

123.    The NASDAQ Listing and Hearing Review Council (the "Council") affirmed the decision to delist Hongli's stock on July 20, 2017.

124.    The NASDAQ Board of Directors informed the Company on September 6, 2017 that it had declined to call the Council decision for review.

125.    On October 6, 2017, the SEC issued a Notification of Removal from Listing and/or Registration on Form 25, citing the Company's continued failure to timely file quarterly and annual reports on Forms 10-Q and 10-K.

126.    As a result of NASDAQ's delisting and suspension of Hongli's common stock, the Company's shares are illiquid and valueless.

127.    The fact that Company failed to file periodic reports with the SEC for over a year (let alone that the Company made materially false statements in its SEC filings and continued to do so even after the securities fraud was exposed by its independent auditor), the fact that the Company defaulted in the Securities Class Action, and the fact that the 2015/2016 10-K reported that between March 31, 2016 and June 30, 2016, the Company "invested" over 96% of its assets, over $37 million, into projects under construction in China – altogether these facts give rise to the inference that the Individual Defendants have abandoned the Company in order to serve their own interests to the detriment of the best interest of the Company.

## DAMAGES TO HONGLI

128.    As a direct and proximate result of the Individual Defendants' conduct, Hongli will lose and expend many millions of dollars.

129.     Such expenditures include, but are not limited to, legal fees and payments associated with the Securities Class Action filed against the Company and Defendants J. Lv and S. Lv and amounts paid to outside lawyers, accountants, and investigators in connection to the Securities Class Action.

130.     Such expenditures include the engagement of an independent valuation firm to value the assets whose impairment was improperly recorded, the preparation of the restatements of all financial statements made prior to the 2015 Q3 10-Q, and an internal investigation into the misconduct causing the false and misleading statements.

131.     Such costs include, but are not limited to, compensation, bonuses, and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

132.     Such losses also include losses of revenues caused by customers' loss of trust in the Company's business and products and increased costs in financing caused by investors' loss of trust in the Company.

133.     Such losses include assets wasted due to the Individual Defendants' abandonment of the Company.

134.     As a direct and proximate result of the Individual Defendants' conduct, Hongli has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE ALLEGATIONS

135.     Plaintiff brings this action derivatively and for the benefit of Hongli to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their

fiduciary duties as directors and/or officers of Hongli and unjust enrichment, as well as the aiding and abetting thereof.

136.    Hongli is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

137.    Plaintiff is, and has been since before the beginning of the Relevant Period, a Hongli shareholder. Plaintiff will adequately and fairly represent the interests of Hongli in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## PLAINTIFF HAS MADE A PRE-SUIT DEMAND THAT WAS WRONGFULLY IGNORED

138.    On July 25, 2017, Plaintiff Justin Sylva made a pre-suit demand on the Company's Board, pursuant to Florida law, to take action to remedy breaches of fiduciary duty by certain officers and directors of the Company, including the Individual Defendants, as alleged in this Complaint. That letter was delivered on July 31, 2017. A copy of the July 25, 2017 demand letter is attached hereto, and made part hereof, as Exhibit A. The July 25, 2017 demand letter and the allegations therein are incorporated herein by reference. The Company did not respond to the July 25, 2017 demand letter.

139.    As of the date of the filing of this Complaint, more than ninety days have passed since the Board received the aforementioned written demand letter, yet the Board has not conducted an investigation into Plaintiff's demand, has not formed a committee to consider the demand, and has taken no action other than completely ignoring Plaintiff's demand.

140.    For these reasons, Plaintiff has made a good faith effort to obtain the desired action from the Board of Hongli, and the Board has wrongfully ignored Plaintiff's demand, which is a necessary prerequisite to filing the instant suit.

141.    In making the demand on the Board, Plaintiff in no way concedes the disinterestedness or independence of any of the Company's directors. Rather, the pre-suit demand was made to give the Board the opportunity to cause the Company to assert the claims directly, in the first instance, that Plaintiff now asserts derivatively.

142.    The Individual Defendants are each personally exposed to potential liability for the wrongdoing alleged herein, as well as in connection with the pending Securities Class Action.

143.    The Individual Defendants have benefited from the wrongdoing alleged herein, and have engaged in conduct to preserve their positions of control, and the perquisites derived therefrom, and to protect themselves from personal liability for their acts of mismanagement and breaches of fiduciary duties.

144.    To properly prosecute this lawsuit, the Individual Defendants would have to cause Hongli to sue themselves, which would expose each of them to millions of dollars in civil liability and/or sanctions.

145.    In light of the Individual Defendants' personal culpability and responsibility for the wrongful acts described herein, the Individual Defendants are not disinterested with respect to their failure to respond to Plaintiff's pre-suit demand.

## **FIRST CLAIM**

### **Against the Individual Defendants for Breach of Fiduciary Duties**

146.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

147.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Hongli's business and affairs.

148.    Each of the Individual Defendants violated and breached his fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

149.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Hongli.

150.    In breach of their fiduciary duties owed to Hongli, the Individual Defendants willfully or recklessly caused the Company to issue false and misleading statements and/or omit material facts to the detriment of the shareholders and the Company, failing to disclose that the Company: (1) failed to properly record the impairment of assets; (2) filed false and misleading statements with the SEC, with respect to both the opinions of its independent auditor and the value of its assets; (3) failed to maintain internal controls; (4) caused the Company to default in the Securities Class Action; and (5) caused the Company to cease to file periodic reports with the SEC for more than the last year.

151.    In breach of their fiduciary duties, the Individual Defendants willfully or recklessly caused or permitted the Company to make the false and misleading statements and omissions of material fact to the investing public as set forth above.

152.    Moreover, the Individual Defendants failed to correct and/or caused the Company to fail to correct the false and/or misleading statements and/or omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

153.    In further breach of their fiduciary duties, the Individual Defendants failed to maintain internal controls.

154.     The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct those public statements and representations. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Hongli's securities.

155.     The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent scheme set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Hongli's securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

156.     These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

157.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Hongli has sustained and continues to sustain significant damages.

158.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

159.     Plaintiff on behalf of Hongli has no adequate remedy at law.

## SECOND CLAIM

### Against Individual Defendants for Unjust Enrichment

160.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

161.     By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Hongli.

162.     The Individual Defendants either benefitted financially from the improper conduct and received unjustly lucrative bonuses tied to the false and misleading statements, or received bonuses, stock options, or similar compensation from Hongli that was tied to the performance or artificially inflated valuation of Hongli, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

163.     Plaintiff, as a shareholder and a representative of Hongli, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits -- including from benefits and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

164.     Plaintiff on behalf of Hongli has no adequate remedy at law.

## THIRD CLAIM

### Against Individual Defendants for Abuse of Control

165.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

166.    The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Hongli, for which they are legally responsible.

167.    As a direct and proximate result of the Individual Defendants' abuse of control, Hongli has sustained significant damages. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations of candor, good faith, and loyalty, Hongli has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

168.    Plaintiff on behalf of Hongli has no adequate remedy at law.

## FOURTH CLAIM

### Against Individual Defendants for Gross Mismanagement

169.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

170.    By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Hongli in a manner consistent with the operations of a publicly-held corporation.

171.    As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Hongli has sustained and will continue to sustain significant damages.

172.    As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

173.    Plaintiff, on behalf of Hongli, has no adequate remedy at law.

## FIFTH CLAIM

**Against Individual Defendants for Waste of Corporate Assets**

174.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

175.    The Individual Defendants caused the Company to pay themselves excessive salaries, bonuses, fees, and stock grants to the detriment of the shareholders and the Company.

176.    As a result of the foregoing, and by failing to properly consider the interests of the Company and its public shareholders, the Individual Defendants have caused Hongli to waste valuable corporate assets, to incur many millions of dollars of legal liability and/or costs to defend unlawful actions, to engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

177.    The Individual Defendants also caused to Company to incur costs associated with the preparation and issuance of restated financials.

178.    As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

179.    Plaintiff on behalf of Hongli has no adequate remedy at law.

## SIXTH CLAIM

**Against Individual Defendants for Violations of
Section 14(a) of the Exchange Act**

180.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

181.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of

such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

182.     Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

183.     Under the direction and watch of the Directors, the 2015 and 2016 Proxy Statements failed to disclose that the Company: (1) failed to properly record the impairment of assets; (2) filed false and misleading statements with the SEC; and (3) failed to maintain internal controls.

184.     The Individual Defendants also caused the 2015 and 2016 Proxy Statements to be false and misleading with regard to executive compensation in that they purported to employ "pay-for-performance" elements while failing to disclose that the Company's revenues and profits, and therefore its financial performance, were based on unsound maintenance and safety protocols and therefore any compensation based on the Company's financial performance was artificially inflated.

185.     The 2015 and 2016 Proxy Statements also made reference to the Company's Code of Business Conduct and Ethics. The Code required the Company and Individual Defendants to abide by relevant laws, rules and regulations and the Code, in addition to "mak[ing] and keep[ing] books, records and accounts, which in reasonable detail accurately and fairly present the

Company's transactions." Further, the Code states "[n]o director, officer or employee of the Company may directly or indirectly make or cause to be made a materially false or misleading statement, or omit to state, or cause another person to omit to state, any material fact necessary to make statements made not misleading, in connection with the audit of financial statements." By failing to properly record the impairment of assets, the Individual Defendants violated the Code of Ethics. The 2015 and 2016 Proxy Statements failed to disclose these violations and also failed to disclose that the terms of the Code of Ethics were being violated.

186.    In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2015 and 2016 Proxy Statement were materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for shareholder determination in the 2015 and 2016 Proxy Statements, including but not limited to, election of directors, ratification of an independent auditor, and the approval of officer compensation.

187.    The Company was damaged as a result of the Individual Defendants' material misrepresentations and omissions in the 2015 and 2016 Proxy Statements.

## REQUEST FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of Hongli, and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Hongli;

(c)     Determining and awarding to Hongli the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)     Directing Hongli and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Hongli and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2. a provision to permit the shareholders of Hongli to nominate at least three candidates for election to the Board; and

3. a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

(e)     Awarding Hongli restitution from Individual Defendants, and each of them;

(f)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(g)     Granting such other and further relief as the Court may deem just and proper.

Dated: November 13, 2017                    Respectfully submitted,

**THE BROWN LAW FIRM, P.C.**

*/s/ Timothy W. Brown*_____

Timothy W. Brown
240 Townsend Square
Oyster Bay, NY 11771
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
Email: tbrown@thebrownlawfirm.net

*Counsel for Plaintiff*

## VERIFICATION

I, Justin Sylva, am the plaintiff in the within action. I have read the foregoing complaint and know the contents thereof. The allegations of the complaint are true of my personal knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 7th day of November, 2017.

_____
Justin Sylva

# EXHIBIT A

# The Brown Law Firm, P.C.

240 Townsend Square, Oyster Bay, New York 11771
Tel: (516) 922-5427, Fax: (516) 344-6204

Timothy W. Brown, Esq.
tbrown@thebrownlawfirm.net

July 25, 2017

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
The Board of Directors of Hongli Clean Energy Technologies Corp.
c/o Cogency Global Inc.
115 North Calhoun St., #4
Tallahassee, Florida 32301

> **Re:    Stockholder Demand on the Board of Directors of Hongli Clean Energy Technologies Corp.**

Dear Directors of the Board:

We represent Justin Sylva (the "Stockholder"), who is a current owner of Hongli Clean Energy Technologies Corp. ("Hongli" or the "Company"), and has continuously held Hongli common stock since before the beginning of the Relevant Period, as defined below.

We hereby demand that the Company's Board of Directors (the "Board") take action against certain current and/or former officers and directors of the Company, including, at least, Jianhua Lv, Song Lv, Hui Huang, Yushan Jiang, Hui Zheng, and Haoyi Zhang and any other individuals or entities that engaged in the wrongdoing set forth below.

By reason of their positions as officers and/or directors of Hongli, and because of their ability to control its business and corporate affairs, the officers and directors owed Hongli and its stockholders fiduciary obligations of good faith, loyalty, and due care. They were and are required to use their utmost ability to control and manage the Company in a fair, just, and honest manner. Moreover, they needed to act in compliance with all applicable federal, state and local laws, rules, and regulations. Similarly, they were and are required to remain informed as to how Hongli conducts its business and corporate affairs, and upon notice or information of imprudent, illegal, or unsound conditions, policies, or practices, make reasonable inquiries in connection therewith, and take steps necessary to correct such conditions, policies, or practices, and, make such public disclosures as necessary to comply with all applicable laws.

As explained below, the Stockholder believes that the aforementioned officers and directors of Hongli violated these fiduciary principles and/or aided and abetted such breaches of fiduciary duties, and were unjustly enriched to the detriment of the Company. Accordingly, Hongli must bring an action against them seeking damages and restitution. In addition, the Company must adopt corporate governance improvements immediately.

Stockholder Demand on the Board of Directors of Hongli Clean Energy Technologies Corp.
July 25, 2017
Page 2 of 5

## I.   FACTUAL BACKGROUND

Hongli is a vertically integrated coal and coke producer incorporated in Florida, with its principal executive offices in the Henan Province, People's Republic of China.  The Company has historically engaged in processes involving its coal resources, such as coal washing, coking, and power generation.

Beginning from at least October 13, 2015 to the present (the "Relevant Period"), Hongli filed quarterly and annual reports on Forms 10-Q and 10-K, respectively, with the United States Securities and Exchange Commission ("SEC") that presented materially false and misleading financial results for the Company, and failed to disclose material adverse facts about the Company's business, operations, prospects, and internal controls.  Specifically, the aforementioned officers and directors of Company willfully or recklessly caused the Company to issue materially false and/or misleading statements and/or fail to disclose that: (1) the Company did not properly record the impairment of its assets; and (2) the Company failed to maintain effective internal controls.  As a result, Hongli's public statements were materially false and misleading at all relevant times.

For example, on October 13, 2015, Hongli filed an annual report on Form 10-K with the SEC, which provided the Company's financial results for the fiscal year ended June 30, 2015.  It stated that the Company's total assets as of June 30, 2015 were $193,640,490, with total current assets being $30,405,425.

On November 13, 2015, the Company filed a quarterly report on Form 10-Q with the SEC, which provided the Company's first quarter financial results for the fiscal quarter ended September 30, 2015.  It stated that the Company's total assets as of September 30, 2015 were $182,615,556, with total current assets being $26,137,461.

On February 16, 2016, the Company filed a quarterly report on Form 10-Q with the SEC, which provided the Company's second quarter financial results for the fiscal quarter ended December 31, 2015.  It stated that the Company's total assets as of December 31, 2015 were $126,499,949, with total current assets being $18,172,218.

On May 23, 2016, the Company filed a quarterly report on Form 10-Q with the SEC, which provided the Company's third quarter financial results for the fiscal quarter ended March 31, 2016.  It stated that the Company's total assets as of March 31, 2016 were $28,059,642, which was substantially lower than its immediately preceding fiscal quarters, with total current assets being $10,751,163.

On April 7, 2017, the Nasdaq Stock Market LLC ("NASDAQ") announced that the trading of Hongli's securities would be halted, effective April 10, 2017, for "additional information requested" from the Company, and stated that trading would continue to be halted until the Company fully satisfied NASDAQ's request for additional information.

Stockholder Demand on the Board of Directors of Hongli Clean Energy Technologies Corp.
July 25, 2017
Page 3 of 5

On April 13, 2017, the Company filed a current report on Form 8-K with the SEC, which stated that Hongli had received a determination letter from NASDAQ that notified the Company of the NASDAQ Hearings Panel's determination to delist the Company's securities from the Nasdaq Capital Market and suspend the trading of Hongli common stock, "effective April 11, 2017 due to its failure to comply with Nasdaq Listing Rule 5250(c)(1) (the 'Reporting Rule')." The Form 8-K noted that the Company had not timely filed its Form 10-K for the fiscal year ended June 30, 2016, nor had it timely filed Form 10-Qs for the fiscal quarters ended September 30, 2016 and December 31, 2016. As of the date of this demand, trading in the Company's securities remains at a halt, and the Company had yet to file the required Form 10-K and Form 10-Qs, potentially subjecting the Company to having its securities removed from registration on the Nasdaq Capital Market.

On April 21, 2017, the Company filed a current report on Form 8-K with the SEC which disclosed that the Company had dismissed its independent auditor, KSP Group, Inc. ("KSP"). In the Form 8-K, the Company stated that KSP had not issued an audit or opinion on any of the Company's financial statements. Notably, the Company additionally stated that there had not been any disagreements between the Company and KSP with regard to any matters of accounting principles or practices, auditing scope or procedures, or financial statement disclosure, which disagreements would have caused KSP to make reference to the subject matter of the disagreement in its reports on the Company's financial statements for such periods if not resolved to KSP's satisfaction. Further, the Company stated that there had been "(ii) no adverse opinion, qualifications, disagreements or reportable events within the meaning set forth in Item 304(a)(1)(ii), (iv) or (v) of Regulation S-K."

However, on April 26, 2017, the Company disclosed in an amended current report on Form 8-K/A filed with the SEC (the "4/26/17 8-K") that KSP did in fact have a disagreement with the Company. It stated that KSP had relayed to the Company that KSP believed a disagreement existed at the time it was notified that it would be dismissed as the Company's internal auditor. The 4/26/17 8-K/A also noted that KSP believed that Hongli needed to use an independent valuation firm to assess whether certain of its assets as reflected in the Company's financial statements were properly valued at the time of acquisition and net of impairment during subsequent periods. The Company further noted that KSP's opinion is based on KSP's belief that the substantial impairment and loss on disposal recorded during the fiscal quarter ended March 31, 2016 may have occurred prior to that fiscal period. The Form 8-K/A also revealed that KSP had discussed the "subject matter" of the request to use an independent valuation firm with Hongli's management.

Attached to the 4/26/17 8-K/A was a letter written by KSP and addressed to the SEC. The letter noted that KSP disagreed with some of the contents of the 4/21/17 8-K, specifically the comment made by Hongli that KSP and the Company did not have any disagreements on matters of accounting principles or practices, auditing scope or procedures, or financial statement disclosure. In the Form 10-K filed on October 13, 2015, the Company's financial statements reflected the Company's total assets at $193,640,490 as of June 30, 2015. In the Form 10-Q filed on May 23, 2016, the Company stated that its total assets were $28,059,642 as of March 31, 2016. As stated in the letter, this revealed a "total impairment of $44,892,912 and the total loss

Stockholder Demand on the Board of Directors of Hongli Clean Energy Technologies Corp.
July 25, 2017
Page 4 of 5

on disposal of assets amounting $61,347,381."  As the letter notes, KSP did not agree with the Company that "the entire loss (Impairment as well as loss on disposal) of $106,240,293 occurred in the nine-month period ended June 30, 2016."  In fact, KSP stated that it believed the impairment of the assets occurred prior to July 1, 2015, and did not occur instantly in the period ended March 31, 2016.

Moreover, in the letter attached to the 4/26/17 8-K, KSP stated that all the Company's prior financial statements should be "re-evaluated based upon actual valuation of the assets on each Balance Sheet date, and be restated to reflect the assets at the impaired amounts."  KSP also stated that it believed that "the impairment expenses related to these assets should have been recorded in the respective periods when the impairments actually occurred."  The letter noted that KSP had communicated the issue to Hongli's management and suggested that the Company engage an independent valuation firm to value the assets of the Company in the prior periods and evaluate the actual value of impairment in each period, which the Company failed to do while KSP was retained as the Company's independent auditor.

Thus, certain of the statements referenced above were materially false and misleading, and failed to disclose material adverse facts about the Company's business, operations, prospects, and internal controls.  Specifically, during the Relevant Period, Hongli's officers and directors willfully or recklessly caused the Company to issue materially false and/or misleading statements and/or fail to disclose that: (1) the Company did not properly record the impairment of its assets; and (2) the Company failed to maintain effective internal controls.

The Company has been substantially damaged as a result of the officers' and directors' knowing breaches of fiduciary duty and other misconduct. These developments have plunged the Company into a period of chaos and uncertainty.  Specifically, the aforementioned misconduct has subjected the Company, Jianhua Lv, and Song Lv to being named as defendants in two federal securities fraud class action lawsuits pending in the United States District Court for the District of New Jersey, the first of which was filed on May 8, 2017.  The officers' and directors' knowing breaches of fiduciary duty and other misconduct have additionally caused a trading halt in the Company's securities and the Company to be delisted from the Nasdaq Capital Market. Hongli has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to, legal fees associated with the class action lawsuits, expenditures related to complying with NASDAQ's request for additional information, and amounts paid to outside lawyers, accountants, and investigators in connection with any internal investigations. As a further direct and proximate result of the misconduct described herein, Hongli has suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future.

Hongli's pervasive wrongdoing in the above-described manipulative and fraudulent schemes could not have escaped the notice of the officers and directors of Hongli, had they been appropriately discharging their fiduciary duties to the Company.  The officers and directors identified above either knowingly engaged in such wrongful acts, or chose not to implement policies and procedures adequate and necessary to ensure such wrongful acts did not occur. Certainly, Jianhua Lv, the Company's CEO and Chairman of the Board, who beneficially owned

Stockholder Demand on the Board of Directors of Hongli Clean Energy Technologies Corp.
July 25, 2017
Page 5 of 5

approximately 33% of the Company's common stock as of September 20, 2016, and was largely responsible for the Company's wrongdoing as a result of his executive and Board positions, was aware of the foregoing misconduct.

## II.  DEMAND

Our client demands that the Board commence a civil action against each responsible individual to recover for the benefit of the Company, including, at least, Jianhua Lv, Song Lv, Hui Huang, Yushan Jiang, Hui Zheng, and Haoyi Zhang and any other individuals or entities that engaged in the wrongdoing as set forth herein. The Company must recover from the aforementioned individuals the amount of damages sustained by the Company as a result of their breaches of fiduciary duties, gross mismanagement, abuse of control, and unjust enrichment, as well as the aiding and abetting thereof.  The Board must also assess whether any third parties should be sued, such as Hongli's financial advisors, auditors, or attorneys.  Hongli must also adopt corporate governance improvements immediately.

Please confirm receipt of this letter and the measures that you plan to take to address the harm inflicted upon Hongli as a result of the conduct described herein. If you have any questions, please do not hesitate to contact the undersigned counsel.

If, after the receipt of this letter, the Board has not commenced action as demanded within a reasonable period of time, we intend to initiate litigation on behalf of the Company. We are willing to assist the Board as it conducts the investigation and will review and comment upon all reports and information generated in the course of its work.

Thank you for your attention to these matters.

Very truly yours,

Timothy W. Brown